(No. 29785.—

THE CITY OF CHICAGO, Appellee, *vs.* REUTER BROS. IRON WORKS, INC., Appellant.

*Opinion filed Sept. 18, 1947—Rehearing denied November 17, 1947.*

LEVINSON, BECKER & PEEBLES, (DON M. PEEBLES, and HALBERT O. CREWS, of counsel,) all of Chicago, for appellant.

BARNET HODES, Corporation Counsel, and BENJAMIN S. ADAMOWSKI, Corporation Counsel on rehearing, (L. LOUIS KARTON, and HERMAN SMITH, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the defendant from a judgment of the municipal court of Chicago, finding the defendant guilty of a violation of section 5 of the zoning ordinance of the city of Chicago, by operating its manufacturing plant on land zoned as a "Family Residence District."

The amended complaint charged that the defendant operated its plant for the fabricating and manufacturing of structural steel in violation of sections 4 and 5 of the 1944 zoning ordinance of the city of Chicago and also charged that the defendant operated its plant in violation of the zoning ordinance of 1923. By its answer the defendant set up that under the 1923 ordinance the property was zoned as a manufacturing district; that in 1940 the defendant secured a building permit and a use permit from the city for the property, which recited that the building was located in a manufacturing district and was to be used for the purpose of metal fabrication; that said property had been used for such purposes continuously since said time and that subsequent to the granting of said permits and the use of said premises for manufacturing purposes the zoning ordinance of 1923 was amended, placing the property used by the defendant in a residential classification, but that defendant's use of said premises cannot be altered by said subsequent amendment. The defendant, by its answer, also asserted that it had not violated the 1923 zoning ordinance in its use of said premises, because the provision of that ordinance prohibiting the use of the

premises for fabricating metals in such a manner which would emit noises of a "disagreeable or annoying nature" was unconstitutional as not being sufficiently specific.

At the hearing there was little dispute as to the nature of defendant's business. Five witnesses testified for the city upon the question of the nature and extent of the noise, and eight witnesses testified upon the same question for the defendant. The witnesses for the city testified that they were annoyed by the noises coming from the plant and those for the defendant were equally certain that the noises were not disagreeable nor were they annoying.

The challenged section of the zoning ordinance of 1923 is as follows: "M-1 Use—An M-1 use shall include such storage, manufacturing or other uses of property coming within the definition of an M-use as do not injuriously affect the occupants of adjacent uses and are so operated that they do not emit dust, gas, smoke, noise, fumes, odors, or vibrations of a disagreeable or annoying nature. * * * Fabricating, other than snap riveting or processes used in bending and shaping of metal which emit noises of a disagreeable or annoying nature, for assembling metal products, forging of metals, melting, casting of metals or manufacturing of steel or alloys of steel from iron, provided no cupola is employed; and further provided no operation is contrary to the general definition of an M-1 use."

The city contends that the defendant has violated the 1944 ordinance because its use of the property, not being in accordance with its permit, violated the 1923 ordinance, and, therefore, the use of the property being unlawful, it is not entitled to any protection as a nonconforming use. The appellant contends that, inasmuch as the judgment of the trial court found the defendant guilty of a violation of section 5 of the 1944 zoning ordinance, the verdict was not responsive to the issues in the cause which were limited to the violation of the 1923 ordinance, and that for that reason the case must be reversed. The defendant further

contends that, even if this were not so, the cause must be reversed because the ordinance of 1923 is so vague and indefinite in using the words "of a disagreeable or annoying nature" that persons of common intelligence, who desire to comply therewith, must necessarily guess as to its meaning.

We first pass to the question of the constitutionality of the ordinance of 1923 which provides for the use of this district for limited manufacturing purposes. In support of its argument, the defendant relies heavily upon *Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130, *Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160, and *Vallat* v. *Radium Dial Co.* 360 Ill. 407. These cases involved the Occupational Diseases Act, which provided that any employer carrying on work which might produce any illness should adopt "reasonable and approved devices" for the prevention of industrial or occupational diseases. In the *Vallat case,* while construing this provision of the statute, this court said generally: "In order that a statute may be held valid the duty imposed by it must be prescribed in terms definite enough to serve as a guide to those who have the duty imposed upon them. * * * if the duty is imposed by statute through the use of words which have not yet acquired definiteness or certainty and which are so general and indefinite that they furnish no such guide the statute must be declared to be invalid. When it leaves the legislature a law must be complete in all its terms, and it must be definite and certain enough to enable every person, by reading the law, to know what his rights and obligations are and how the law will operate when put into execution."

The city argues on this point that while the above holdings are correct in the general line of cases, in these holdings the words used in the statute had no well-defined meaning in the particular industry and were unknown to common law and therefore they were properly held void for want of certainty. They further state that where the

words used possessed the requisite certainty because of a well-settled common-law meaning the statute is enforceable and valid. The essence of the city's contention in this regard is that the words used in the ordinance of 1923 set up a common-law nuisance. The cases cited by the city herein are all involving nuisances at common law arising from noise. They cite, as a leading case in point, *City of Chicago* v. *Hunt,* 374 Ill. 234, in which case a civil action was brought to recover a penalty for "making or aiding in making an improper noise, riot, disturbance, breach of peace, or diversion tending to a breach of the peace, within the limits of the city." The court said, "We laid down the rule to which we now adhere that if the legislative body uses words having a common-law meaning or a meaning made definite by statutory definition or previous judicial construction, it may strike directly at the evil intended to be curbed, leaving it to the pleader to state facts bringing the case within the statutory definition and to the judicial department of government to interpret the application of the acts to the facts stated."

A nuisance at common law is that which unlawfully annoys or does damage to another. (*King* v. *Davenport,* 98 Ill. 305.) Further, at common law, mere noise may be of such character as to constitute an actionable nuisance remediable by an action on the case for damages or by injunction. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Darke,* 148 Ill. 226.) These principles are so much a part of the common law that further citation of authority is unnecessary on this point. It is to be noted that the zoning ordinance of 1923 provides for the fabrication of metals by means of practices which do not "emit noises of a disagreeable or annoying nature." An examination of the authorities discloses that the word "annoyance" had a meaning in the common law in defining a nuisance. (*King* v. *Davenport,* 98 Ill. 305.) In *Rosehill Cemetery Co.* v. *City of Chicago,* 352 Ill. 11, this court used the word

"disagreeable" in defining a nuisance. It can be said, then, after a careful reading of the cases on this point, that the words "disagreeable" and "annoying" did have a well-established meaning at the common law in the definition of a common-law nuisance. We, therefore, hold the zoning ordinance of 1923 constitutional as setting forth a duty in terms which have acquired an established meaning through the common law.

We fail to see the merit of the defendant's contention that the judgment is not responsive to the evidence in the cause. It is obvious from the reading of the record herein that all facts were presented to the court and, to hold as it did, it must have first found an unlawful nonconforming use under the 1923 ordinance in order to find the defendant had violated the ordinance of 1944. The 1923 ordinance was superseded by that of 1944. If appellant is violating any ordinance whatsoever it must be that of 1944. By pleading the nonconforming use the question to be determined by the court was whether or not such nonconforming use was lawful. Upon finding that it was not lawful, then the court properly found the defendant in violation of the ordinance of 1944 which established this district as a residential zone.

This cause, however, must be reversed upon another ground. We have held that the duty prescribed by the ordinance requires a holder of a use permit to so conduct his business that he does not commit a common-law nuisance. It is to be noted that the ordinance of 1923 permitted manufacturing in this district. It further permitted the fabrication in metals so long as such fabrication of metals did not emit noises sufficient in intensity to cause a common-law nuisance. The appellant in this cause, therefore, was using its plant for recognized purposes in a district in which such purposes were permitted.

We must recognize that in industrial districts in large cities the rights of residents have become modified to some

extent by the use to which such districts are put. In *City of Kankakee* v. *New York Central Railroad Co.* 387 Ill. 109, involving a suit for the abatement of an alleged nuisance, we stated "that people residing in industrial communities, must bear, in part, the annoyance or detriment that is occasioned by industries of the community." This case involved an ordinance of the city of Kankakee which provided that no person should allow the escape from any smokestack or chimney of such quantities of ash, dust, soot, etc., in such place or manner as to cause injury, detriment, nuisance or annoyance to any person or to the public.

The problem has been recognized in other jurisdictions. A careful reading of the cases from those jurisdictions discloses that the better rule in cases of this type is that laid down in *Tortorella* v. *H. Traiser & Co.* 284 Mass. 497, 188 N. E. 254. In that case suit was brought by an owner of a residence near a factory building alleging that the noise from the factory was annoying and disturbing to the occupants of the premises and tended to create irritability and headaches. The Supreme Court of Massachusetts, in holding that the plaintiff could not recover, set forth the following test: "The test is whether rights of property, of health or of comfort are so injuriously affected by the noise in question that the sufferer is subjected to a loss which goes beyond the reasonable limit imposed upon him by the condition of living, or of holding property, in a particular locality in fact devoted to uses which involve the emission of noise although ordinary care is taken to confine it within reasonable bounds; or in the vicinity of property of another owner who though creating a noise is acting with reasonable regard for the rights of those affected by it."

It is obvious, as claimed by the defendant herein, that the fabrication of metal would require the emission of some noise. It goes without saying then that the ordinance of 1923 recognizes that some noise will be produced

by the fabrication of metals in accordance with this directive. The ordinance of 1923 does not attempt to preclude the fabrication of metals in a plant in this district. Under our holding, such ordinance only precludes the use of the property where such noise arising from the fabrication of metals results in a common-law nuisance. A reading of the record in this cause discloses that the suit as filed by the city of Chicago was not based on a common-law nuisance. The record further discloses that no proof was offered tending to show that a common-law nuisance arising from noise had been created in the operation of this plant. The witnesses testifying for the city gave evidence tending to show that the noises complained of arise not so much from the operation of machinery in the plant as from the noises incident to the handling of metals. The evidence discloses that the sounds complained of were the sounds of metal beams coming in contact with each other. We cannot say, on this evidence, that a common-law nuisance has been proved. In accordance with the test set forth in the *Tortorella case*, there is no showing in this record that a common-law nuisance has arisen which places the defendant in the position of having violated the ordinance of 1923. Under these circumstances, we hold that the use to which defendant put the property under the ordinance of 1944 was a nonconforming use excepting the company from the terms of the ordinance. There was no violation by the company of such ordinance shown by this record.

For the reasons herein stated, the judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*