(No. 33631.—

LUELLA DUBE *et al.*, Appellants and Cross Appellees, *vs.* THE CITY OF CHICAGO, Appellee and Cross Appellant.

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

314

THOMAS J. DOWNS, and WILLIAM W. CURRAN, both of Chicago, for appellants and cross appellees.

JOHN C. MELANIPHY, Acting Corporation Counsel, of Chicago, (L. LOUIS KARTON and CLAUDE E. WHITAKER, of counsel,) for appellee and cross appellant.

Mr. JUSTICE DAVIS delivered the opinion of the court:

By separate actions filed in the superior court of Cook County plaintiffs, Luella Dube, as owner, and others as lessees of a factory property located in the city of Chicago sought injunctions restraining the defendant, the city of Chicago, from prosecuting any action against them involving a violation of section 12 of the Chicago zoning ordinance and from prosecuting them under section 99-60 of the Chicago Municipal Code. The complaints alleged that both ordinances are unconstitutional as applied to plaintiffs or their property and are in violation of the due process provisions of the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of Illinois; that they are discriminatory, permit the taking of private property for public use without just compensation and bear no substantial relation to the public health, safety, morals or general welfare. The defendant answered, admitting certain formal allegations but substantially denying the various allegations of fact. It also filed a counterclaim in which it alleged that certain prior

proceedings which culminated in a decision in the Appellate Court, First District, were *res judicata* of the controversy between the parties and prayed that plaintiffs be restrained from further violations of the ordinances in question as well as section 34-6 of the Municipal Code. After the answer and counterclaim were permitted to stand as to both complaints, the causes were consolidated and referred to a master to take proofs and report his findings. The master recommended that plaintiffs' prayers for permanent injunctions be denied; that the plaintiffs be restrained from using the premises in violation of section 12(2) of the Chicago zoning ordinance and section 99-60 of the Municipal Code and that defendant's prayer for injunction against plaintiffs violating section 34-6 of the Municipal Code be denied. Exceptions to the master's report filed by both parties were overruled and a decree was entered in accordance therewith. Plaintiffs appeal directly to this court because the judgment involves the construction of a constitutional provision and the constitutionality of a municipal ordinance, which questions were raised in the trial court and passed upon there. Defendant has filed a cross appeal from so much of the decree as denied an injunction under section 34-6 of the Municipal Code.

The subject property is located at the northwest corner of the intersection of East Seventy-third Street and Kimbark Avenue in the city of Chicago, having a frontage of about 160 feet on East Seventy-third Street and a depth of 125 feet on Kimbark. The premises are bounded on the east by Kimbark Avenue, on the south by East Seventy-third Street, on the north by a public alley and on the west by the right of way of the Illinois Central Railroad on which are located tracks carrying the trains of that railroad, the South Shore electric and those of the Big Four Division and Michigan Central of the New York Central System. The premises are improved by a one-story brick factory building which occupies about the west half of the

frontage on East Seventy-third Street. Plaintiffs also own the property north of the alley which has a frontage of about 155 feet on Seventy-second Place, the street next north of East Seventy-third Street, and a depth of 125 feet on Kimbark. This lot and the easterly half of the lot on which the building is located are not improved by buildings. To the east of the subject premises across Kimbark Avenue and east of Kimbark along Seventy-second Place and East Seventy-third Street is a largely residential neighborhood containing residences and apartment buildings, some of which are less than 200 feet from the subject premises. To the north, south and west of the property the uses are principally business and manufacturing, including steel fabricators, a beer warehouse, a gas bulk plant, a building material warehouse, a coal yard, a dairy, a boiler works and a seed company. Both the original Dube property and the property to the north fronting on Seventy-second Place are located in an area designated by the Chicago zoning ordinance as a manufacturing district.

Section 12(2) of the Chicago zoning ordinance provides for certain uses in manufacturing districts in language in part as follows: "Manufacturing, processing, packing, bottling and distributing of cement products; ice; ink; metal and metal products (except smelting by employment of cupola, snap riveting and processes used in bending and shaping which produce noises disturbing the peace and comfort of occupants of adjacent premises); polishes from finished oil, fat and wax; products from plastics, rubber, shoddy and shoddy felt; soap from refined oils or fats, provided effective condensers or other appliances are used where necessary to prevent the escape of noxious odors, gases or fumes; woodwork (except sawmilling)." Section 19 of the same ordinance provides that any lawful use of property on the effective date of the ordinance, which by virtue of its provisions is a nonconforming use, is permitted after the ordinance becomes effective, subject to the

limitations therein set forth. Section 99-60 of the Municipal Code of Chicago provides: "It shall be unlawful for any person to construct or maintain, within two hundred feet of any residence, a factory wherein are used pneumatic hammers or other apparatus which cause loud or unusual noises. Any person violating any of the provisions of this section shall be fined not less than twenty-five dollars nor more than one hundred dollars for each offense, and each day's violation shall be considered a separate and distinct offense." Section 34-6 of the same code provides as follows: "No person shall use any public way for the storage of personal property, goods, wares or merchandise of any kind. Nor shall any person place or cause to be placed in or upon any public way any barrel, box, hogshead, crate, package or other obstruction of any kind, or permit the same to remain thereon longer than necessary to convey such article to or from the premises abutting on such sidewalk." The foregoing are the pertinent provisions of the ordinances in question in this case.

While not determinative of the issues herein presented, a history of the prior litigation relative to the same premises is of interest. In 1945 several persons residing in the immediate vicinity of the property made complaint to the commissioner of buildings of the city of Chicago, the official designated as the zoning enforcement officer, of an alleged violation of section 12(2) of the zoning ordinance. After a hearing before the officer the complaining parties appealed to the zoning board of appeals. That body found "that the processes used in the bending, grinding, shaping and hammering of metals produces noises disturbing the peace and comfort of occupants of adjacent premises and that a violation of the zoning ordinance exists and is contemplated." The board ordered the commissioner of buildings to take action to abate the violation. The owner of the property and her lessees then petitioned the circuit court of Cook County for a writ of *certiorari* which was allowed. The

court, after hearing further evidence, entered an order sustaining the decision of the board and quashing the writ. Those interested in the property then brought a direct appeal to this court on the ground that the constitutionality of an ordinance was involved. This court decided that it was without jurisdiction and transferred the case to the Appellate Court, First District. The opinion points out that the primary question presented was whether the uses then obtaining were the same uses to which the property was devoted at the time of the passage of the ordinance and, if so, the question of law as to whether the lessees are entitled to continue operations as a nonconforming use. The opinion also points the distinction between an attack on a judgment which involves the construction of a constitutional provision and an attack on a judgment where it is claimed that its enforcement will work a deprivation of some constitutional right, and holds that in the latter case no constitutional question is involved authorizing a direct appeal. (*Dube* v. *Allman*, 396 Ill. 470.) The Appellate Court decided that the then use by the plaintiff lessees was not the same as the prior use by Dube which obtained at the time of the passage of the ordinance and that it was not a legal nonconforming use. The Appellate Court said: "From an examination of the record we think the evidence adduced before the board of appeals and the trial court clearly shows that immediately after the plaintiff lessees went into possession of the premises the operation and conduct of their business constituted a different nonconforming use; that the noises emanating from plaintiff lessees' plant disturb the peace and comfort of the residents in the vicinity, many of whom appeared as complaining witnesses, and that during the period Dube conducted his business there no such disturbances as here complained of were made." The Appellate Court affirmed the order sustaining the decision of the board of appeals and quashing the writ. (*Dube* v. *Allman*, 333 Ill. App. 538.) Petition for leave to appeal

was denied by this court. (400 Ill. 627.) It appears that since the decision of the Appellate Court property owners in the vicinity have continued to complain and that the city has instituted several suits in the municipal court against the owners for alleged violations of the ordinances, several of which are now pending.

Plaintiffs contend that the use to which the premises are now devoted is a legal nonconforming use in the pursuit of which they are protected under section 19 of the zoning ordinance; that as applied to them and their property the ordinances are unconstitutional for reasons already stated and that the trial court erred in dismissing their complaints for want of equity. They do not assign as error the trial court's action in ordering injunctions pursuant to the prayer of defendant's counterclaim if the ordinances are free from the constitutional objections urged.

Upon the first question presented—that of legal non-conforming use—there is nothing in the present record which leads to a conclusion different from that arrived at by the Appellate Court in 1948. Theophilus Dube founded the business in question prior to 1900. He was engaged in the manufacture of garbage burners, hot-water-tank heaters and did general repair work. Most of the items manufactured were for use in homes and were small in size. The operations were confined almost entirely to the interior of the building, the lot to the east being used for storage purposes. Dube never employed more than about 20 men. It appears that this number worked for him about the year 1920. During most of the time he operated the plant, however, far fewer employees were engaged—sometimes as few as three or four. This was particularly true during the 1930's. The lot to the north of the plant fronting on Seventy-second Place was never used by Dube for manufacturing purposes. Some riveting was done in connection with the work but this was performed inside the building. Such noise as was created was of practically no

annoyance to the occupants of nearby property, though one of plaintiffs' witnesses testified that there had been some complaints. About the year 1944 Dube leased the plant to plaintiff lessees. Plaintiff Luella Dube became the owner of the property upon the death of her husband which occurred about five years prior to the commencement of the present actions.

After the plant was leased to plaintiff lessess in 1944 they engaged in war work on a rather extensive scale including repair work on turrets for army tanks. A considerable amount of this work was done outside the plant on the lot to the east. In connection therewith air hammers were used to punch the rivets which held the tank baskets. After the war the plaintiffs engaged in the manufacture of tanks for diesel engines. According to the testimony of their own witnesses they are now engaged in the manufacture of road building equipment, frames, ditcher frames, pavers and mixing frames. Though plaintiffs' witnesses sought to minimize its extent, it fairly appears from all the evidence that a large amount of activity is now carried on outside the building, both on the lot to the east and the lot to the north which was never utilized by Dube. On this lot some heavy machinery has been installed, including a shear or punch press which is used to cut steel into strips and punch it off. One witness testified that when the machine is in operation his house vibrates. In connection with these operations machines called jitterbugs are used. These are a kind of air hammer or vibrator used to clean scale and welding slag off the tanks and other products manufactured. That these outside activities produce noise is not denied. That the noises are extremely offensive and annoying is attested by the residents of nearby property who testified for the city.

The facts in the record clearly establish that the present use is not only a greatly expanded use but a different use. The manufacture of small items has given way to the

fabrication of machinery and larger items. Operations formerly confined mostly to the building are now carried on outside and land not owned or used by the original proprietor is now utilized for this purpose. Heavier machinery than that formerly used is employed. The plant now employs about 45 men—more than twice the number ever employed by Dube. Therefore the present use is not only more extensive than the former but in fact more intensive and of a different character. Courts have recognized that the employment of new instrumentalities and methods may constitute an objectionable extension of an existing nonconforming use where they operate to change the original nature and purpose of the undertaking. (*De Felice* v. *Zoning Board of Appeals,* 130 Conn. 156, 32 A. 2d 635; 58 Am. Jur. 1030.) So also an expansion of a use to land not formerly used may be an illegal extension or enlargement of the previous nonconforming use. (*Burmore Co.* v. *Champion,* 124 N.J.L. 548, 12 A. 2d 713; Annotation: 147 A.L.R. 167.) Though the new use and the old may fall within the general category of "manufacturing" it is the particular use and not the general classification which governs. (*Wechter* v. *Board of Appeals,* 3 Ill. 2d 13.) The fact therefore that the present use is a manufacturing use is not alone enough to afford it the protection of section 19 or establish its status as a legal nonconforming use. It may be, as plaintiffs contend, that a mere increase in the volume of business is not an expansion of a nonconforming use, but much more than an increase in volume is here involved and that factor is not determinative. The contention that plaintiffs are maintaining a legal nonconforming use must be rejected.

But plaintiffs also say that if section 12(2) of the Chicago zoning ordinance is enforced as to them and their property it would deprive the plaintiffs of the use to which the property was put before the enactment of the ordinance; that as applied to them the ordinance is unconsti-

tutional as a denial of due process and a violation of the prohibition against taking private property for public use without just compensation. This contention stems from the particular provisions of section 12(2) which permit the manufacture of metal and metal products in the limited manufacturing districts involved but except therefrom "smelting by employment of cupola, snap riveting and processes used in bending and shaping which produce noises disturbing the peace and comfort of occupants of adjacent premises." These provisions are similar to those of the Chicago zoning ordinance of 1923 prescribing conditions of operation and use in limited manufacturing areas. The law at that time provided that an M-1 use should include such uses of property coming within the definition of an M-use "as do not injuriously affect the occupants of adjacent uses and are so operated that they do not emit dust, gas, smoke, noise, fumes, odors or vibrations of a disagreeable or annoying nature." It further provided for "Fabricating, other than snap riveting or processes used in bending and shaping of metal which emit noises of a disagreeable or annoying nature, for assembling metal products, forging of metals, melting, casting of metals or manufacturing of steel or alloys of steel from iron, provided no cupola is employed; and further provided no operation is contrary to the general definition of an M-1 use." In construing the provisions of the 1923 ordinance this court held that the words used set up a common-law nuisance; that the ordinance was constitutional and not subject to the objection that its provisions were vague and indefinite since the words used had a definite meaning at common law. (*City of Chicago* v. *Reuter Bros. Iron Works, Inc.* 398 Ill. 202.) There is no substantial difference between the restrictive provisions of the two ordinances. The former prohibited operations in connection with metal work which produced noises of a "disagreeable or annoying nature" as might injuriously affect the occu-

pants of adjacent premises. The present law prohibits noises in connection with the manufacture of metal products which are such that they can be said to be "disturbing the peace and comfort of occupants of adjacent premises." It appears that both have the same object—that of preventing the creation of a nuisance as it was known at common law. The holding of this court in the *Reuter Bros. case* is determinative here so far as the construction of the ordinance is concerned.

Provisions of the zoning laws prescribing conditions of business or manufacturing designed to avoid nuisance or annoyance have been held valid by the courts. (*City of Chicago* v. *Reuter Bros. Iron Works, Inc.* 398 Ill. 202; *Franklin Contracting Co.* v. *Deter,* 99 N.J.L. 22, 122 Atl. 600; *Malm* v. *Dubrey,* 325 Mass. 63, 88 N.E. 2d 900; *Beverley Oil Co.* v. *Los Angeles,* 40 Cal. 2d 552, 254 P. 2d 865; Annotation: 173 A.L.R. 271.) The cases hold that so long as such ordinances have as their object the protection of the public health, safety, comfort, morals and general welfare, are reasonably calculated to effect that purpose and are not arbitrary or unreasonable, they are to be upheld as a proper exercise of the police power. The tests applied are the same as those applied to zoning ordinances generally which must be justified, if at all, by the paramount interest of the public welfare and the realization that private interests must sometimes be subordinated to the public good. The constitutional declarations that private property shall not be taken for public use without just compensation or without due process of law are always subordinated to the interest of the public welfare as expressed through the exercise of the police power of the State. (*Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91; *Ehrlich* v. *Village of Wilmette,* 361 Ill. 213; *Forbes* v. *Hubbard,* 348 Ill. 166.) Indeed, it is the nature of all zoning regulations that they invade or limit individual property rights to some extent, but notwithstanding that

fact they are valid as a constitutional exercise of the police power so long as they are not arbitrary and bear a reasonable and substantial relation to the public health, safety, comfort, morals and general welfare.

While a city under its general power to define and abate nuisances has no power to declare that a nuisance which is not a nuisance in fact, (*Rosehill Cemetery Co.* v. *City of Chicago,* 352 Ill. 11; *Town of Cortland* v. *Larson,* 273 Ill. 602; *People ex rel. Friend* v. *City of Chicago,* 261 Ill. 16), its power to enact regulations to prevent the endangering or impairment of public health is not limited to the regulation of such things as have already become nuisances or have been declared to be such by the judgment of a court, but where an act or thing is of such nature that it may become a nuisance, or may be injurious to the public health if not suppressed or regulated, it may be regulated though never injurious in the past and the legislation will be held valid though it may operate to deprive or limit property rights once it is shown that its exercise is proper and the method of its exercise within the meaning of due process. (*Sullivan* v. *Los Angeles Dept. of Bldg. & Safety,* 166 Cal. A. 807, 254 P. 2d 590; *Laurel Hill Cemetery* v. *San Francisco,* 216 U.S. 358; *Hadacheck* v. *Sebastian,* 239 U.S. 394.) Though noise is not a nuisance *per se,* it may be of such a character as to constitute a nuisance in fact even though it arises from the operation of a factory, industrial plant or other lawful business or occupation. (*Phelps* v. *Winch,* 309 Ill. 158; 39 Am. Jur. 330.) The test in such cases is "whether rights of property, of health or of comfort are so injuriously affected by the noise in question that the sufferer is subjected to a loss which goes beyond the reasonable limit imposed upon him by the condition of living, or of holding property, in a particular locality in fact devoted to uses which involve the emission of noise although ordinary care is taken to confine it within reasonable bounds; or in the vicinity of property

of another owner who though creating a noise is acting with reasonable regard for the rights of those affected by it." (*City of Chicago* v. *Reuter Bros. Iron Works, Inc.* 398 Ill. 202, 208, quoting from the opinion in *Tortorella* v. *H. Traiser & Co.* 284 Mass. 497.) A zoning ordinance which delimits designated areas for the location of manufacturing industries or general business does not license the emission of every noise profitably attending the conduct of such businesses. (*Tortorella* v. *H. Traiser & Co.* 284 Mass. 497.) In other words, no one, even in pursuing an otherwise lawful business, ever acquires a vested right to create or maintain a noisy nuisance in connection therewith.

We believe that the proof in the record before us is sufficient to show that plaintiffs have been guilty of maintaining a common-law nuisance in the manner in which they have operated their business. Six residents testified that the noise from the plant was such that it caused them serious discomfort. There was some testimony that the noise was attended by vibrations. One witness testified that when a certain heavy machine was used his house vibrated. Another testified that the dishes in his home rattled. Sometimes the operations carried on outside the plant are at night, though this does not happen all the time. All of these witnesses testified that the other noises in the neighborhood do not bother them; that the noises from Dube have been burdensome only since 1944 when operations were begun outside and that formerly the noises from Dube were not disturbing. Only one resident of the neighborhood testified that the noise from Dube did not disturb him. He was an employee of the plant. Plaintiffs introduced the testimony of two sound-testing engineers who had made certain tests with a sound-level meter, an instrument designed to measure the intensity of sound in decibels. Their testimony purports to show that the sounds and noises emanating from Dube are of no greater intensity than the other sounds in the neighborhood, including noises

from trains, trucks and other vehicles. However reliable and accurate such devices may be in measuring intensity, they do not purport to measure the effect of particular sounds on human sensibilities. Nor do they account for differences of pitch or tone. The staccato beat of an air hammer on metal, though producing a sound of no greater intensity than the rumble of a truck, may produce a far more serious effect on the human being within hearing distance. Applying the test as laid down in the *Tortorella case* and adopted by this court in *Reuter Bros. case,* we conclude that the health and comfort of the residents of the neighborhood in this case are injuriously affected by the noises and vibrations in question and that they are subjected to discomforts which go beyond the reasonable limits imposed upon them because of living or of holding property in the vicinity of an industrial zone. It also appears that the operators of the factory have not used ordinary care to confine the noise within reasonable bounds. Under the circumstances we cannot say that the ordinance as applied to plaintiffs and their property is unconstitutional. In challenging the constitutionality of the ordinance and seeking equitable relief against its enforcement plaintiffs assumed the burden of proving that, as applied to their property, the law was clearly arbitrary and unreasonable and bore no substantial relation to the public health, safety, comfort or general welfare. The trial court properly found that plaintiffs had not sustained their burden of proof.

Much of what has already been said as to section 12 of the zoning ordinance applies as well to section 99-60 of the Municipal Code. The plaintiffs say that as applied to their property its effect is to exclude and prohibit an existing and established use and business. As we view it, this ordinance merely says that no factory shall be operated or maintained within 200 feet of a residence in such a way that loud and unusual noises are emitted, thus creating a nuisance. The law does not prohibit the use of pneu-

matic hammers or any other apparatus in connection with the operation of a factory within 200 feet of a dwelling but it does say that if such devices are used they shall not be used in such a manner as to cause loud or unusual noises. Plaintiffs say that the ordinance attempts to declare that a nuisance exists which is not a nuisance in fact, relying upon *People ex rel Younger* v. *City of Chicago,* 280 Ill. 576, and *City of Chicago* v. *Netcher,* 183 Ill. 104. In the *Younger case* an ordinance prohibiting a stable for more than ten horses within 200 feet of any church, school and other specified institutions was held unconstitutional. In the *Netcher case* this court declared invalid an ordinance which prohibited one engaged in the sale of dry goods and clothing from selling groceries, meats and provisions, pointing out that the ordinance did not regulate but prohibited and that the prohibition was a purely arbitrary one. Neither of these cases holds, however, that a city may not pass an ordinance regulating a business which is not a nuisance *per se* where the ordinance is directed only to prevent a business from being conducted in such a manner that it may become a nuisance. A municipality is not required in a case where danger is to be apprehended to wait until a nuisance actually exists before taking action to safeguard the public health. Thus an ordinance prohibiting the emission of dense smoke within the corporate limits of the city of Chicago was held constitutional. (*Harmon* v. *City of Chicago,* 110 Ill. 400.) And an ordinance regulating the operation of lumber yards which prohibited the piling of lumber within 100 feet of any residence within the city's fire limits was held to be a valid exercise of the police power. (*City of Chicago* v. *Ripley,* 249 Ill. 466.) So also an ordinance to prevent noxious odors from slaughter houses within the city limits (*Harmison* v. *City of Lewistown,* 153 Ill. 313) and an ordinance prohibiting the fabrication of metals in such a manner as to emit noises of a "disagreeable and annoying nature," (*City of Chicago* v.

*Reuter Bros. Iron Works, Inc.* 398 Ill. 202,) were held valid. It is our conclusion that the challenged section of the municipal Code is regulatory in nature, valid as applied to plaintiffs and their property, and free from the claims of unconstitutionality advanced by them.

There remains only the error assigned upon cross appeal by the city based on the trial court's refusal to enjoin plaintiffs from violating section 34-6 of the Municipal Code which prohibits the storage of personal property upon a public way. The master to whom the cause was referred found that although there was some evidence of improper use of the premises and the alley and street of the nature charged, on the whole record the evidence was insufficient to establish the city's right to injunctive relief. From a careful reading of the record we find no reason to disturb the findings. The evidence does not show such a violation of the ordinance as would warrant the interposition of a court of equity. Under the circumstances enforcement should rest with an application of the penal provisions of the code. (28 Am. Jur. 343.) Therefore the trial court was justified in entering its decree in accordance with the findings of the master.

The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*