**CITY OF AUBURN**

v.

**EASTERN DIE COMPANY.**

Supreme Judicial Court of Maine.

Dec. 8, 1971.

Linnell, Choate & Webber by G. Curtis Webber, Auburn, for plaintiff.

Marshall, Raymond and Beliveau by Laurier T. Raymond, Jr., Thomas E. Delahanty, II, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

In November of 1967 the City of Auburn brought a complaint against the Defendant company seeking to enjoin it from continuing its factory operations at a level exceeding at all that which it had maintained in 1935. The Defendant's factory is situated in a general residence zone as defined by a municipal ordinance enacted in 1931 and

its status as a nonconforming use is alleged by Plaintiff to result from the provisions of this ordinance.

The Justice in the Superior Court ruled that the 1931 ordinance was invalid and that its subsequent amendments were equally ineffective. He found that the first effective municipal zoning ordinance of the City was enacted in 1951 and that the nature and extent of Defendant's nonconforming use against which its present use must be measured was that existing immediately prior to the 1951 enactment. His ultimate conclusion that the use complained of was a permissible nonconforming use was based upon his determination that the 1951 ordinance alone controlled and that Defendant's later use was not more objectionable or detrimental to the neighborhood than the 1951 use.

Our consideration of his rejection of the 1931 ordinance becomes the first duty presented by Plaintiff's appeal.

On September 21, 1931 the Auburn City Council passed a zoning ordinance which, purportedly, at least, was accepted by the electors at a referendum held on November 9, 1931. The authority for the enactment by the City of a zoning ordinance was derived from R.S.1930, Chap. 5, §§ 137 to 144 inclusive. Section 143 contained the sole statutory provisions for the acceptance by the electorate, and read:

"Sec. 143. Provisions of zoning law may be accepted at a special election duly called; form of question to be submitted. 1925, c. 209, § 7. 1927, c. 172, § 5. No ordinance or by-law enacted under the powers hereby conferred shall be in force and effect until accepted by a majority of the electors of the city, town, or village corporation voting at a regular election for the election of municipal officers of such city, town, or village corporation or for the election of one or more members of any city council or at a special election duly warned, called, and conducted in the same manner as required for such regular election.

At the time of the submission to the voters, the question shall be submitted in this form: 'Shall the Zoning Ordinance be Accepted?' Those favoring the acceptance shall vote 'Yes,' those opposed shall vote 'No.' "

The vote accepting the ordinance complied with these conditions but a problem arises from the fact that § 13 of the ordinance itself reads:

"Section 13. This ordinance shall take effect upon its passage and acceptance by the electors in accordance with the provisions of *Section 141 of Chapter 5 of the Public laws of 1929.*" (Emphasis added)

The reference to the Public Laws of 1929 is erroneous since there is no Section 141 of Chapter 5 of the Public Laws of 1929 and Chapter 5 itself has to do with fees payable to Registers of Probate. The Public Laws of 1929 do not contain any legislation concerning zoning or any other municipal ordinance.

■ As faint as the resemblance is, it is apparent that a clerical error must explain the draftsman's use of P.L.1929, Chap. 5, § 141 instead of R.S.1930, Chap. 5, § 143. It appears to us that the draftsman attempted to incorporate by reference, unnecessarily, the statutory language which defined the manner in which the voters of a municipality must act to give its ordinances effect. In any event, it is for the Legislature and not the City to determine the conditions under which cities and towns may validly adopt zoning ordinances. The Legislature did this in R.S.1930, Chap. 5, § 143 and the City of Auburn complied with the statutory directions. The erroneous reference was a nullity.

We hold that the 1931 ordinance was validly adopted.

The Single Justice took care to provide for the contingency which might result from our finding that he was in error in holding the 1931 ordinance invalid—as we have now done. He specifically found that

if the 1931 ordinance was valid, the Defendant's operation both in 1951 and at time of hearing was not a permissible nonconforming use.

He found the essential facts to be that on the effective date of the 1931 ordinance the Defendant's premises were occupied by a family enterprise consisting of a husband and wife and two employees who operated an auto repair and body shop. As the property was in a residential zone, this was a nonconforming use but permissible because it existed prior to enactment of the ordinance. R.S.1930, Chap. 5, § 142.

Subsequently, the premises were purchased by the Defendant which in July, 1935 obtained a permit from the Building Inspector to change the use of the building to permit the manufacture of cutting dies which are used in the shoe industry. An appeal was taken by some of the residents of the area but it was withdrawn without hearing when the Defendant company agreed to limit the extent of its operations to the level then maintained.[1] This level, the Justice found, consisted of a four person operation of the auto repair and body shop business in a main building about the same size as at the present time with five doors large enough to permit the entrance of motor vehicles. Nearby was a garage of six stalls which were rented from time to time.

The 1931 ordinance empowered the Building Inspector to permit (subject to

appeal) a change from a pre-existing nonconforming use (here, the auto repair and body shop) to another nonconforming use (the machine die shop) only to the extent authorized by Section 8:

"Section 8. (a) Any lawful use of a building, premises, or part thereof existing at the time of the adoption of this ordinance may be continued, although such use does not conform with the above provisions hereof. In the case of an existing building or part thereof designed and intended for a non-conforming use, such use in a part thereof may be extended throughout the building or part thereof so designed and intended or changed to any use permitted in a zone where such non-conforming use would be permitted *and not more objectionable or detrimental to the neighborhood,* provided no structural alterations are hereafter made therein, except those required by law, ordinance or regulation. *Any use of premises injurious, noxious or offensive to a neighborhood by reason of the emission of odor, fumes, dust, smoke, vibration or noise is prohibited.*" (Emphasis added).[2]

The authority of the City to regulate by ordinance changes in nonconforming use was derived from R.S.1930, Chap. 5, § 142[3] and subsequent enactments the language of which was followed substantially in R.S. 1944, Chap. 80, § 84[4] which in Frost v. Lucey, Me., 231 A.2d 441, 447 (1967) we construed as permitting municipalities to

---

1. The present complaint does not present us with the precise issue of whether the Defendant's extra-judicial assurances to the neighbors have been honored and if not whether they have a remedy.

2. The 1951 ordinance (which the Justice found to have been enacted validly) superceded the 1931 ordinance but its section 108.1, which relates to nonconforming uses, is identical to section 8(a) of the 1931 ordinance.

3. "No ordinance or by-law adopted under the powers created by said sections one hundred thirty-seven to one hundred forty-four inclusive shall apply to structures existing at the time of the adoption

of the ordinance nor to the then existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose or in a manner substantially different from the use to which it was put before the alteration, and shall apply to a substantial change in the uses of a building when put to a new use without alteration."

4. " . . . .
Regulations enacted under the provisions of this section shall not apply to structures and the use thereof existing at the time they are enacted but shall apply to alterations in structure or use made thereafter."

regulate only such substantial changes in pre-existing uses as amount to a new use or a use of a different character than the nonconforming use to which the ordinance was made inapplicable.

We said there:

"The courts generally have construed similar zoning statutes or ordinances as requiring a substantial change or difference in character before condemning a use as an unlawful extension of a nonconforming use. A nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance, and mere increase in the volume of business done pursuant to a nonconforming use by natural expansion and growth of trade cannot be considered an unlawful extension of that use. . . .

An expansion or extension in the volume of business in pursuance of a nonconforming use does not constitute such a change of the use or such an expansion or extension thereof as is within the prohibition of the zoning ordinance or enabling act unless it amounts to a change in the character of the existing nonconforming use."

While the new 1935 use was a nonconforming use of a different character than the pre-existing use, the change had been validly authorized by the Building Inspector. The Justice below, however, found this authorization to have been conditional.

"The withdrawal of objection to the 'change of use' permit in 1935 validated the change. This change of use from an automobile body shop to the manufacture of dies *did not absolve the die manufacturers from the obligation to operate in a manner 'not more objectionable or detrimental to the neighborhood'* and to avoid emission of noxious or offensive fumes to the neighborhood." (Emphasis added)

The Justice appears to have viewed the permit granted the Defendant in 1935 as being conditioned upon the operation not *later* becoming more objectionable or detrimental to the neighborhood. We must disagree with this interpretation and our disagreement will prove determinative of our decision on Plaintiff's appeal.

Testimony was presented by the Plaintiffs to the effect that in 1935 the Defendant originally manufactured a type of cutting die known as a perforating die and that in the following years there was a substantial increase in the volume of production of this die and in the number of persons employed in this operation along with objectionable traffic congestion, noise, smoke and odor. In 1953 the Defendant changed to the production of another cutting die known as a "clicker" die and there was a further increase in volume of business, in numbers of employees and of vehicular traffic. Although the Justice found that the production of clicker dies entailed "more grinding with resultant noise, fumes and dirt", between 1953 and the date of hearing structural changes and operational improvements had "reduced the noise volume" and "the grinding process in the manufacture of the 'clicker' dies".

The Justice's decree first measured the Defendant's use as of the date of the 1951 amendment (while Defendant was still manufacturing perforating dies) against the 1935 use and found that it was in violation of the ordinance because it was not a permissible nonconforming use as "it was more objectionable and detrimental to the neighborhood than in August of 1935 and there were noxious and offensive emissions from the operation". He added a finding that if the 1931 ordinance was valid—as we have found it was—no later amendment removes the nonconforming quality of Defendant's operation and it "remains in violation".[5]

---

5. It is necessary to note in this connection that if Defendant is in violation of any ordinance it is the 1960 ordinance

which replaced the 1951 ordinance. While the 1960 ordinance appears to be more restrictive as to nonconforming uses

The Justice then held that if the 1931 ordinance was invalid, the 1951 ordinance was the first valid ordinance and the Defendant's pre-1951 use thus became the lawful pre-existing use against which he measured Defendant's current operation. Although the operation had changed to that of production of clicker dies in 1953, the Justice found that it did not then or later become in violation of the 1951 ordinance or of later amendments.

We consider that Section 8(a) authorizes a change from one nonconforming use to another "permitted in a zone where such nonconforming use would be permitted" upon determination by the Building Inspector (subject to appeal) that the new use would not be "more objectionable or detrimental to the neighborhood" than the previous use. Having been granted a valid permit for a change of use after such determination, the Defendant was entitled to continue this new use. Its new use, however, was subject to the limitation imposed by Section 8(a) of the ordinance that it may not become "injurious, noxious or offensive to the neighborhood by reason of the emission of odor, fumes, dust, smoke, vibration or noise"—the object of which limitation courts have found to have been to prevent the creation of a nuisance as it was known at common law. Dube v. City of Chicago, 7 Ill.2d 313, 131 N.E.2d 9 (1955).

Defendant's use would also become unlawful if it became substantially changed or different in character or if the volume of business done under the nonconforming use became so expanded or extended as to amount to a change in the character of the use. Frost v. Lucey, supra.[6]

Now we must consider the Justice's findings in the light of our conclusion that he was in error 1) in finding that the 1931 ordinance was invalid and 2) in his interpretation of the 1931 ordinance as subject to a future condition that the use will not become more objectionable or detrimental to the neighborhood.

The Justice's determination that if the 1931 ordinance was valid the Defendant's present use is in violation was based on his finding that the use in 1951 had become more objectionable and detrimental to the neighborhood than the 1935 use (a fact which we hold would not now extinguish the legality of Defendant's use as authorized by the 1935 permit) and also on his finding that "there were noxious and offensive emissions from the operation" (a fact which might have made Defendant's use unlawful if his decision had been made as of 1951 conditions and if he had specified that the noxious and offensive emissions he had found to have been present in 1951 were among those forbidden by Section 8(a).)

The Justice then said—referring to present conditions—"The Defendant's operation *remains* in violation." (Emphasis added). The Justice was then measuring Defendant's *present* operation against the 1935 operation. His conclusion that it remains in violation is based in part, at least, upon his finding that it is more objectionable and detrimental than the 1935 operation, a finding resulting from an interpretation of Section 8(a) which we have found to be erroneous.

Did he also intend by his language to include a finding that the *present* use of the premises is *still* injurious, noxious or of-

---

than the 1931 or 1951 ordinances, its significance in this discussion lies in the fact that if Defendant's use was unlawful under the 1931 ordinance, it could not be considered a lawful pre-existing nonconforming use under the 1951 ordinance or under the 1960 ordinance. City of Chicago v. Reuter Bros. Iron Works, Inc., 398 Ill. 202, 75 N.E.2d 355, 173 A.L.R. 266 (1947).

6. Although this issue is not raised on Plaintiff's appeal, Defendant's use would also be subject to being enjoined if it amounted to a nuisance under the statutes or common law. Houlton v. Titcomb, 102 Me. 272, 66 A. 733 (1906); 17 M.R.S.A. §§ 2705, 2802; 30 M.R.S.A. § 4953(8).

fensive to the neighborhood by reason of any of the emissions forbidden by the ordinance? We cannot say.

The Justice then went on to find that if the 1951 ordinance was the first valid ordinance, then Defendant's present use, as measured against the 1951 use, is not in violation. The Justice found that the volume of business had increased by one third with corresponding service deliveries and other traffic and that the manufacture of clicker dies "entailed more grinding, with resultant noise, fumes and dirt" but that, on the other hand, Defendant had recently improved the structure of the building, reduced the noise and improved the grinding process. Did the Justice mean that because of these changes there are no more injurious, noxious or offensive emissions? Or only that the present use is not *more* objectionable or detrimental to the neighborhood than the 1951 use, both of which uses *did* result in noxious and offensive emissions? We cannot say.

The Justice, using the "more objectionable and detrimental to the neighborhood" phrase as a measuring stick, made no findings as to whether the present use was or was not such a substantial change from the 1935 use as to constitute a new use or a use of a different character in the manner discussed in *Frost,* as Plaintiff has alleged or whether the present use amounts to a nuisance.

Our holding that the Justice's use of this measuring stick was error vitiates the results of his careful analysis of the facts and requires a rehearing of the matter.

Appeal sustained. Remanded to the Superior Court for further action not inconsistent with this opinion.

WEBBER, J., did not sit.

All Justices concurring.