**CITY OF CENTRAL CITY, Appellant,**

v.

**Leroy KNOWLTON, Appellee.**

**No. 59373.**

Supreme Court of Iowa.

May 17, 1978.

Humphreys & Associates, Cedar Rapids, for appellant.

Francis J. Pruss, Cedar Rapids, for appellee.

Considered by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON, and McCORMICK, JJ.

MASON, Justice.

Plaintiff, City of Central City, is a municipal corporation organized and existing under the laws of Iowa and located within Linn County. It instituted an equitable action seeking to abate an alleged nuisance created by Leroy Knowlton's use of his property as a junkyard and to enjoin such use of his property by defendant because of an alleged violation of plaintiff's zoning ordinance.

Plaintiff had alleged three grounds for relief. In division 1 it claimed defendant's use was in violation of its comprehensive zoning ordinance number 103. In division 2 plaintiff maintained defendant's use constituted a nuisance under section 657.2, The Code, 1973. In division 3 plaintiff alleged defendant's use was a nuisance as defined in section 306C, The Code, 1973. Prior to trial the court dismissed division 3 of the petition on the basis plaintiff was not the proper party to bring an action under chapter 306C, The Code.

After trial in this matter, the trial court entered its findings of fact, conclusions of law and decree on March 15, 1976. The court determined the junkyard was not a nuisance as defined in chapter 657, The Code, 1973, and its existence was not a violation of Article VII, the nonconforming use section, of plaintiff's comprehensive zoning ordinance number 103.

April 14, thirty days after the court entered its decree, plaintiff's attorney served notice of appeal on defendant's attorney.

April 15 the notice of appeal was filed in the Linn District Court. March 4, 1977, defendant filed a motion to dismiss the appeal on the ground this court lacked jurisdiction because the appeal was not taken within 30 days of the entry of the trial court's decree. Plaintiff did not resist this motion. This motion was ordered submitted with the appeal.

I. In his motion defendant contends plaintiff's appeal should be dismissed since it was not timely taken as mandated by rule 335(a), Rules of Civil Procedure, as then in force. The new Rules of Appellate Procedure became effective July 1, 1977. A similar contention was rejected by the majority in division I of the opinion of this court in *Cook v. City of Council Bluffs*, 264 N.W.2d 784 (Iowa, filed April 19, 1978). Hence, defendant's motion to dismiss the appeal is overruled.

II. In 1953 defendant began operating a junkyard in Central City on 40 acres of land he and his wife later purchased. April 25, 1967, he granted an option to the Linn County Conservation Board to purchase approximately 38 acres of his land. In the option defendant agreed to clean up junk he had stored on the land and to tear down a barn located on the land he retained. August 11 defendant conveyed the land to the board. Sometime later defendant conveyed six-tenths of an acre of his remaining land to the state for highway use. At the time of the action here he retained approximately 1.4 acres of the original 40.

April 18, 1967, the City passed ordinance number 103 which in part rezoned defendant's land R–1, single family residence. This rezoning made defendant's junkyard a nonconforming use. The ordinance took effect April 27.

Article VII of the ordinance dealt with nonconforming uses. Section A was used to explain the intention of the City as to such uses. In pertinent part it provided:

" * * *

"It is the intent of this Ordinance to permit these nonconformities to continue until they are removed, but not to encourage their survival. Such uses are declared by this Ordinance to be incompatible with permitted uses in the districts involved. It is further the intent of this Ordinance that nonconformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district."

Section C of the ordinance dealt with nonconforming uses of land. It stated:

"Where, at the effective date of adoption or amendment of this Ordinance, lawful use of land exists that is made no longer permissible under the terms of this Ordinance as enacted and amended, such use may be continued, so long as it remains otherwise lawful, subject to the following provisions:

"1. No such non-conforming use shall be enlarged or increased nor extended to occupy a greater use of land than was occupied at the effective date of adoption or amendment of this Ordinance.

"2. No such non-conforming use shall be moved in whole or in part to any other portion of the lot or parcel occupied by such use at the effective date of adoption or amendment of this Ordinance."

June 4, 1968, defendant obtained from the City a permit to build a private garage on his land. This garage was constructed and has since been used as a place to store and from which to sell used automobile parts. October 8, 1971, defendant obtained a permit to build a new single family residence on his lot. This too had been built and occupied by defendant at the time of trial.

We set out a portion of the court's findings of fact, conclusions of law and decree:

" * * *

"4) When Defendant and his wife owned the entire tract most of the storage of junkers was on the back portion which was sold to Linn County. Most of the salvage work and the parts storage was carried out to the front of the area (retained portion) and the junkers carried to the back. Some hulks, though perhaps not many, were almost always to be found on the retained area.

"5) At the time of the sale to Linn County there were between 400 and 500 junk units stored on the conveyed portion. Defendant cleaned out that area by disposing of many of them, in time, and moving a number onto the retained premises. He has continued to use the retained area to carry on his salvage and junk business on the retained area.

"6) The volume of Defendant's business has decreased over the years. There are nowhere near the number of junked units on the property at present as there were in the heyday of Defendant's operation on the entire 40 acres. However, there are enough units strewn around the property today to constitute a sight environmental problem."

In its conclusions of law the court determined the junkyard was not a nuisance as defined in chapter 657, The Code. The court also determined the following:

" * * *

"From the time of original acquisition Defendant operated his business on the premises as a non-conforming use under the zoning ordinance. I recognize that a non-conforming use is not favored and may not be expanded or enlarged but must remain in substantially the same scope and nature as that existing at the time of passage of the zoning ordinance. *Stan Moore Motors, Inc. v. Polk Co. Bd. of Adj.*, 209 N.W.2d 50 [Iowa]. Plaintiff cites many other cases in support of this doctrine. However, Defendant has not expanded nor enlarged a prior non-conforming use. There has been a restriction of the use both as to area and the extent of activity. At times there may have been an increase in per acre intensity of the number of junk cars on the premises, but the overall use has not been expanded or enlarged. * * * [citing authorities]."

Plaintiff maintains the following questions are presented for review:

1. Did the trial court err in failing to find defendant's use of his land violated plaintiff's zoning ordinance number 103, Article VII, Section C(2)?

2. Did the trial court err in failing to find defendant's use of his land violated plaintiff's zoning ordinance number 103, Article VII, Section C(1)?

3. Did the trial court err in failing to find defendant's construction of a house and garage on his property violated plaintiff's zoning ordinance number 103, Article VII, Section C(2)?

■ III. In equity our review is de novo. Rule 334, Rules Civil Procedure, (rule 4, Rules of Appellate Procedure). It is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. *In re Marriage of Jennerjohn*, 203 N.W.2d 237, 240 (Iowa 1972).

IV. Plaintiff argues in support of its first contention defendant moved his junk business in whole or in part to a portion of his property which was not used for the junk business prior to the adoption of the ordinance.

Plaintiff's witness Vincent Vanis, the City Clerk of Central City at the time of trial, testified on direct examination there were no cars on the retained portion of defendant's property prior to adoption of the ordinance. On cross-examination, he first was not sure whether there were any cars and then admitted there were cars there and had been cars there for several years before. He admitted defendant had used the whole original parcel for a junkyard.

George Hamilton, another of plaintiff's witnesses and Linn County Conservation Director, testified on direct examination about his examinations of defendant's property prior to the county's purchase of 38 acres of the land. He did not recall any cars being on the portion later retained by defendant. On cross-examination he was shown pictures of the retained area which were taken prior to 1967. He admitted an old trailer parked on the retained portion

did not look like a good workable trailer. He also stated the position of the County Conservation Board that defendant's property constituted a sight environmental problem. He further testified the retained portion was "*relatively* free of junk prior to our [the County Conservation Board] acquiring it." (Emphasis supplied).

Richard Timms, another of plaintiff's witnesses, testified on cross-examination he could see junk around the house in the pre-1967 pictures.

Dr. Willard Tidball, a dentist, testified on direct examination by plaintiff he could not tell from the pictures if there was junk on the retained portion. He admitted on cross-examination that he had not examined defendant's property prior to 1967. He admitted defendant sold junk from the area of the house prior to 1967.

Defendant testified he had used the barn on the retained portion prior to 1967 for storage. After he had torn it down pursuant to his contract with the county, he had put a cover over the basement and continued to use it to store parts. He explained he had stripped the cars on the retained portion and had then taken the hulks out to the back. On cross-examination he explained he had only kept the better looking junks on the retained portion of land. On redirect he stated he had always sold junk from the barn.

Elvin McMurrin, defendant's witness, testified there had been junk cars on the retained portion prior to 1967.

From our de novo review we conclude plaintiff failed to sustain its burden of establishing by a preponderance of the evidence that defendant had violated the zoning ordinance. In our view the evidence introduced at trial was sufficient to establish the fact the retained portion of the land was clearly used for junk business prior to 1967. Plaintiff's first contention is without merit.

V. Plaintiff insists the trial court erred in failing to find defendant's consolidation of his junkyard from forty acres to two acres was an illegal enlargement and increase of a non-conforming use. The record establishes the fact there was an increase in the amount of cars stored on the retained portion in 1967 after the ordinance was adopted. There is some dispute whether the amount of junk has increased or decreased since then.

Assuming arguendo the amount of junk on the retained portion has steadily increased since 1967 and the junk business has flourished, we find the question before us is whether such an intensification amounts to an illegal enlargement.

In *Worthington v. Everson,* 10 Ohio App.2d 125, 226 N.E.2d 570, 571 (1967), the defendant had stored 33 junk cars on a 4.41 acre parcel of land. After enactment of a zoning change which stated buildings or structures on land constituting a nonconforming use could not be altered or expanded, the defendant had accumulated over 400 cars on the same acreage. The court speaking generally on the issue of intensification of an existing nonconforming use stated:

"In the present instance, the land use is not being changed in nature. There is an increase in the amount of business, but such increase does not constitute a change in use which existed at the time of the adoption of the zoning resolution. It is generally held that an increase in business done on a parcel of land comprising a non-conforming use is not an extension of use. See: 2 Metzenbaum Law of Zoning, 2d Ed., 1227 et seq. and authorities there cited."

This same point is made in *Kent County Planning Inspector v. Abel,* 246 Md. 395, 228 A.2d 247, 252. There the court was faced with a problem and zoning ordinance different from that before us now. However, it made the following general statement as to intensification of an existing nonconforming use:

"Also, in *Jahnigen v. Staley,* 245 Md. 130, 225 A.2d 277 (1967) we again recognized the right of a property owner to intensify a nonconforming use. Judge Marbury, speaking for the Court, said at 225 A.2d 281:

" 'The basic premise underlying zoning regulations is to restrict rather than expand non-conforming uses. * * * [citing authorities]. However, an intensification of a non-conforming use is permissible so long as the nature and character of the use is unchanged *and substantially the same facilities are used.* * * * [citing authorities].' (Emphasis supplied). * * * ."

Plaintiff states these cases are distinguishable upon their facts and that in any event it is to the language of the zoning ordinance here that we should look. Here the ordinance prohibits enlargement or increase or extension to occupy a greater use of land than was occupied at effective date of adoption of the ordinance. Section C(1), Article VII, zoning ordinance number 103.

In *Feldstein v. LaVale Zoning Board,* 246 Md. 204, 227 A.2d 731, an ordinance the City of LaVale had adopted proscribed extension of a nonconforming use. The court stated, 227 A.2d at 734:

" * * * The zoning ordinance (§ 10 a 3) in this case provides that a nonconforming use shall not be extended, but that does not mean the vested nonconforming use of the junkyard owner could not be lawfully intensified. The chancellors held that the increase in the quantity and height of the stored scrap metal was an intensification and not an extension under the law. We agree."

▆▆▆ The use made of this 1.4 acres at the time of the effective date of the ordinance involved is the standard to be used in determining whether the increase in business transacted on this tract as claimed by plaintiff amounts to an illegal enlargement of a nonconforming use.

In this connection the following statement from *State ex rel. Zoning Insp. of Montgomery Co. v. Honious,* 20 Ohio App.2d 210, 211, 253 N.E.2d 301, 302, is relevant:

"The evidence * * * dwells more upon 'enlarged use' than upon 'enlarged area.' Specifically, the testimony revolves almost completely around the difference in the number of junk cars located on the premises at the time of the zoning restriction and the number of cars located in the area at the time of the commencement of this action.

"While such evidence has a limited bearing upon the real issue in the case, it is not, without more, conclusive of the rights of the parties. * * *

"Nonconforming use restrictions apply to area rather than inventory. While an increased number of junk cars in an agricultural area is extremely undesirable, such an increase is no different in principle from the increased inventory of a grocery store in a residential area if the structure or area actually used in the complete operation of the business is not enlarged or extended after the enactment of the zoning resolution."

It is our view in light of the authorities cited in this opinion any increase in business shown by this record does not alone constitute an unlawful extension of a nonconforming use. Plaintiff's contention to the contrary is without merit.

▆▆▆ VI. Plaintiff asserts the trial court erred in failing to find an extension of the nonconforming use because the court failed to consider the construction by defendant of buildings (the house and garage) on the land. Plaintiff supports its contention by citation to the underlined portion of the previously cited *Kent County Planning Inspector* case.

Defendant contends this issue was not raised in the trial court and, therefore, may not be raised for the first time on appeal.

We have carefully read the pleadings of the parties and considered the evidence presented at trial. We find no issue raised as to the house or garage being an illegal extension of defendant's nonconforming use. This issue will not be considered on appeal. *Long v. Long,* 255 N.W.2d 140, 144 (Iowa 1977).

The case is therefore—Affirmed.