Ned STUCKMAN, Bertha Stuckman and Gary Stuckman, Appellants (Defendant Below),

v.

KOSCIUSKO COUNTY BOARD OF ZONING APPEALS and Papakeechie Protective Association Appellees (Plaintiff Below).

No. 3–885–A–227.

Court of Appeals of Indiana, Third District.

July 29, 1986.

Rehearing Denied Sept. 29, 1986.

Paul D. Refior, Warsaw, for appellants.

Max E. Reed, Warsaw, for Kosciusko Co. Bd. of Zoning Appeals.

Stephen R. Snyder, Syracuse, for Papakeechie Protective Ass'n.

STATON, Presiding Judge.

Ned, Bertha, and Gary Stuckman appeal from an injunction ordering them to cease their use of part of their property as an automobile graveyard, and restricting such use on the rest of their land.

Ned and Bertha Stuckman purchased Lots A through K of Lake Papakeechie Subdivision No. 2 by land contract in the 1950's, and have occupied the property since then.[1] Beginning March 1, 1975, when the Kosciusko County Zoning Ordinance went into effect, the Stuckman property has been zoned residential. However, on the effective date of the ordinance, the Stuckmans were using their land for an automobile graveyard, among other things, and as such had a lawful, pre-existing nonconforming use.

Under the zoning ordinance, a nonconforming use may not be extended, expanded, or changed, except as permitted by the Board of Zoning Appeals. The Kosciusko County Board of Zoning Appeals and the Papakeechie Protective Association commenced this action for injunctive relief, alleging that the Stuckmans had expanded their automobile graveyard business in violation of the ordinance. The trial court found that the Stuckmans had unlawfully expanded their automobile graveyard business on Lots A through D, and ordered them to cease all automobile graveyard operations on the four lots until they complied with certain restrictions. The court further found that the Stuckmans had

---

1. The Stuckmans' son Gary occupied some portion of the land and helped conduct the auto salvage business at the time the Board of Zoning Appeals commenced this action.

abandoned the automobile graveyard use on Lots E through K.

The Stuckmans appeal, raising five issues, which we consolidate and restate as follows:

I. Whether the trial court erred in admitting Plaintiff's Exhibits 4 through 7, 9 through 11, and 49 through 54, and in allowing certain witnesses to testify about them;

II. Whether the trial court erred in finding that the Stuckmans unlawfully expanded their prior nonconforming use on Lots A through D;

III. Whether the trial court erred in finding that the Stuckmans abandoned their prior nonconforming use on Lots E through K;

IV. Whether the trial court's injunctive orders had sufficient basis in fact or in law.

Because we reverse and vacate the entire injunction, we will discuss only Issues II and III.

## I.

### Extension, Expansion, and Change

■ The Kosciusko County Zoning Ordinance provides, at Section 3.61:

> A nonconforming use may be continued, but may not be *extended, expanded, or changed* unless to a conforming use, except as permitted by the Board of Zoning Appeals, in accordance with the provisions of [the] Ordinance.

(Record, at 474) (Emphasis added).

The trial court found that the Stuckmans maintained a modest automobile graveyard operation throughout Lots A through K at the time the zoning ordinance was adopted in 1975. The Court estimated the business to consist of about 100 vehicles per year, with no more than 80 vehicles on the property at any one time. In 1981 and 1982, the Stuckmans cleared and smoothed Lots A through D, and increased the number of vehicles stored on and sold from these lots. The trial court found that this increase in the volume of the Stuckmans' automobile

graveyard business violated the county zoning ordinance. Assuming, arguendo, that the Stuckmans did intensify their automobile graveyard business on Lots A through D, we must determine whether this intensification violates the county's ordinance prohibiting extension, expansion, or change of a nonconforming use.

■ The purpose of zoning regulations is to confine certain classes of uses to certain areas, and to restrict and eventually eliminate nonconforming uses. *Misner v. Presdorf* (1981), Ind.App., 421 N.E.2d 684, 686; *Taylor v. Metropolitan Development Com'n, Etc.* (1982), Ind.App., 436 N.E.2d 1157, 1159; *Jacobs v. Mishawaka Bd. of Zon. App.* (1979), 182 Ind.App. 500, 395 N.E.2d 834, 836, *reh. denied, trans. denied* (1980). However, the right of a governmental body to enact zoning ordinances is subject to vested property interests acquired prior to enactment of the ordinance. *Jacobs v. Mishawaka Bd. of Zon. App., supra,* 395 N.E.2d at 836. An ordinance prohibiting any continuation of a pre-existing nonconforming use is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power, *Id.,* but the extension, expansion, or change of such a use may be prohibited.

It is a case of first impression in Indiana whether the intensification of a nonconforming business use within the same area constitutes an impermissible extension, expansion or change. Generally speaking, prohibitions against extension or expansion concern the area of the use, while prohibitions against change concern the nature and character of the use itself. *See* 101A C.J.S. *Zoning & Land Planning* § 169. The courts do not always make this distinction, *see, e.g., Carroll v. Hurst* (1982), 103 Ill.App.3d 984, 59 Ill.Dec. 587, 431 N.E.2d 1344; *City of Central City v. Knowlton* (1978), Iowa, 265 N.W.2d 749; and in circumstances where both the area and the use itself are affected, the distinction may not be clear.

It has been held in other jurisdictions that natural business growth is permissible

so long as the nature and character of the use are not changed, *see, e.g., Carroll, supra,* 431 N.E.2d at 1348; *Knowlton supra,* 265 N.W.2d at 754; *Truly v. Nielsen* (1960), La.App., 121 So.2d 754, 757; *Kent County Planning Inspector v. Abel* (1967), 246 Md. 395, 228 A.2d 247, 252, and substantially the same facilities are used. *Knowlton, supra; Abel, supra.* A small existing nonconforming business cannot be so enlarged that its effect upon neighboring land is changed in kind. *Inspector of Bldgs. of Burlington v. Murphy* (1946), 320 Mass. 207, 68 N.E.2d 918, 919. It is generally recognized, however, that a mere increase in business volume is not an impermissible change. *See, e.g., Carroll, supra; Knowlton, supra; Truly, supra; Murphy, supra; State ex rel. Zoning Inspector of Montgomery County v. Honious* (1969), 20 Ohio App.2d 210, 253 N.E.2d 301.

It could be argued that the Stuckmans' clearing of Lots A through D so that cars could be parked in rows and stacked constitutes more than a mere increase in business volume. However, the Stuckmans are not expanding their nonconforming use into new areas. They are merely providing for the more efficient utilization of land on which they already store junk cars, in conjunction with an increase in the number of the cars themselves.

At most, the clearing of the land is comparable to the introduction of new methods or instrumentalities for conducting a business, which is permissible as long as the nature and purpose of the use are not changed. *See, e.g., Dube v. City of Chicago* (1955), 7 Ill.2d 313, 131 N.E.2d 9, 13–14; *Union Quarries, Inc. v. Bd. of County Com'rs of Johnson County* (1970), 206 Kan. 268, 478 P.2d 181, 187; *Vella v. City Zoning Bd. of Appeals, City of Rochester* (1954), S.Ct., 206 Misc. 941, 135 N.Y.S.2d 704, 708. While the number of junk cars on the Stuckmans' property has increased, they continue simply to store and sell the cars. The nature and purpose of their business has not changed and neither has its effect on neighboring landowners. The problems associated with the Stuckmans'

business before the intensification, truck travel to and from the Stuckmans' property and the visibility of the junk cars, are the same problems that exist after the intensification; they have changed in degree, perhaps, but not in kind.

The Board and the Protective Association rely on *Misner v. Presdorf* (1981), Ind. App., 421 N.E.2d 684, *reh. denied, trans. denied,* as support for their position that the Stuckmans' intensification of their automobile graveyard business is an impermissible expansion. In *Misner,* this court held that the addition of campsites to a campground was an impermissible enlargement, increase, or expansion of the nonconforming use. The addition of new campsite facilities in *Misner* is distinguishable from the Stuckmans' increase in business done with their existing facilities. See *City of Central City v. Knowlton* (1978), Iowa, 265 N.W.2d 749, 754; *Kent County Planning Inspector v. Abel,* (1967), 246 Md. 395, 228 A.2d 247, 252. In *State ex rel. Zoning Inspector of Montgomery County v. Honious* (1969), 20 Ohio App.2d 210, 253 N.E.2d 301, the Court of Appeals of Ohio compared an increase in the number of cars processed at a junkyard to an increase in the business inventory of a grocery store, *Id.* 253 N.E.2d at 302, and the accompanying clearing of land in this case would be comparable to a grocery store rearranging its shelving and storage area. It is true that the inventory of a junkyard is exposed to neighboring landowners, whereas a grocery inventory is not, but this is so whether the inventory is increased or not. An increase in junk cars may be more undesirable, but it is no different in principle than an increase in any other sort of business inventory.

We reverse the trial court's judgment that the Stuckmans' intensification of their automobile graveyard business on Lots A through D was an impermissible expansion of their nonconforming use.

## II.

### *Abandonment*

■ The trial court found that the Stuckmans' nonconforming use of Lots E

through K for an automobile graveyard was ended by disuse. We will reverse only if the evidence is uncontradicted and will support no reasonable inference in favor of the judgment. *Misner, supra,* 421 N.E.2d at 686.

The Kosciusko County Zoning Ordinance, at Section 3.63, provides as follows:

> In the event that any nonconforming use, conducted in a structure or otherwise, ceases, for whatever reason, for period of one (1) year, the use of the same shall thereafter conform to the uses permitted in the district in which it is located.

(Record, at 474). It is well settled in Indiana that abandonment of a nonconforming use requires a concurrence of the intent to abandon and a voluntary act or failure to act signifying abandonment. *Dandy Co., Inc. v. Civil City, Etc.* (1980), Ind.App., 401 N.E.2d 1380, 1383.

The zoning ordinance, at Section 7.1, defines an automobile graveyard as, "any establishment or place of business which is maintained, operated, or used for storing, keeping, buying or selling wrecked, scrapped, ruined, or dismantled motor vehicles or motor vehicle parts."

Photographs in evidence showed wrecked and ruined vehicles on Lots E through K after this action was commenced, and there was testimony that the vehicles had been there since before the zoning ordinance went into effect. There is no evidence in the record that the Stuckmans had at any time moved these vehicles off of Lots E through K, even temporarily, nor is there any other evidence of any voluntary act or failure to act on the part of the Stuckmans that would indicate abandonment of their nonconforming automobile graveyard use on Lots E through K. Assuming, arguendo, that the Stuckmans intensified their automobile graveyard use on Lots A through D, we find that this could not, of itself, constitute abandonment of this use on Lots E through K.

We therefore reverse the trial court's judgment that the Stuckmans abandoned their nonconforming automobile graveyard use on Lots E through K, as well as its

judgment that they impermissibly extended, expanded, or changed this use on Lots A through D. The entire injunction should be vacated.

HOFFMAN and GARRARD, JJ., concur.