# IN THE COURT OF APPEALS OF IOWA

No. 16-1080
Filed June 7, 2017

**CITY OF DES MOINES, IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARK OGDEN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Mark Ogden, a property owner, appeals from the district court's findings that use of his property as a mobile home park is a danger to the safety of life and property, the park has exceeded its previous nonconforming use, and the court's injunction and order to cease use of the property as a mobile home park. Because the record supports the findings of the district court and because Ogden has made no effort to mitigate the violations documented by the City, we affirm. **AFFIRMED.**

James E. Nervig of Brick Gentry P.C., West Des Moines, for appellant.

Luke DeSmet, Assistant City Attorney, Des Moines, for appellee.

Jessica J. Taylor and Laura Jontz, Iowa Legal Aid, for amici curiae.

Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Mark Ogden appeals the district court's order enjoining the continued nonconforming use of Ogden's property as a mobile home park. He claims the district court erred in determining the land use expanded beyond its previously authorized nonconforming use and revocation of the use is necessary for the safety of life or property. He also claims the district court erred in determining equitable estoppel does not bar the injunction. Finally, he claims the district court abused its discretion in excluding Gloria Lang's testimony. We affirm.

**I. Background Facts and Proceedings.**

Ogden owns a tract of land situated on the south side of Des Moines where he operates a mobile home park (the "property"). Ogden purchased the property in 2013, but he has been involved in the maintenance and upkeep of the park since his uncle purchased the property around 1975, and he started actively managing the park in 1999 due to his uncle's declining health. The property sits on the northwest corner of Indianola Avenue and Park Avenue and contains approximately thirty-nine mobile home pads that are leased to park residents. Approximately half of the pads and homes are situated on the outside perimeter of the property. A narrow, u-shaped access road circles the inside of the property and separates the interior homes from the perimeter homes.

The record does not reveal the entire historical use of the property. Testimony and photographs depict the property was used as a tourist camp in 1947. Sometime shortly thereafter, the use of the property changed to a mobile home park. In 1955, the City of Des Moines issued a certificate of occupancy allowing the operation of a trailer court on the property contrary to the 1953 Des

Moines zoning ordinances, which prohibited the use of mobile home parks. A 1963 aerial photograph of the property depicts permanent homes that are in close proximity to each other with additional structures attached to the homes. Nothing else in the record describes the condition of the property in 1963.

More recent pictures of the property depict a congested, dilapidated, and hazardous jumble of structures. Many of the mobile homes are within feet of each other based on the addition of porches, decks, and living space. Residents park cars throughout the property narrowing portions of the already inadequate access road. Bulk trash items—such as tires, boats, and storage bins—are littered throughout the property. Grills, fences, gardens, and children's toys also crowd the property.

The record does not indicate the city took any action against the property after the certificate of occupancy was issued in 1955 until 2003. In 2003, Richard Clark—then owner of the park—was allegedly operating portions of the property as an auto dealership. The City of Des Moines issued a letter informing the owner the 1955 certificate of occupancy legitimized the use of the land as a mobile home park but did not authorize the park's use as an auto dealership. The city did not issue any additional warnings or citations regarding the mobile home use until 2014.

On August 5, 2014, SuAnn Donovan, neighborhood inspection zoning administrator for the city, notified Ogden by letter explaining the "park has numerous violations of municipal zoning codes that were in place at the time the land was converted to a mobile home park." The city alleged the following violations of the 1955 Des Moines Municipal Code: (1) failure to provide a thirty-

five-foot set-back from Park Avenue; (2) failure to provide a twelve-foot set-back from Indianola Road; (3) failure to provide a forty-foot setback along the lot line running north from Park Avenue; (4) failure to provide a fifteen-foot set-back along the lot line running west from Indianola Road; (5) failure to supply 1,200 square feet of lot area per mobile home (6) failure to maintain a twenty-foot unobstructed driveway accessible to the public street, properly maintained with an all-weather surface, marked, and lighted; (7) failure to maintain twelve-foot clearance between trailers; (8) failure to provide a two-foot walk way between trailers to the public street; (9) failure to provide fire extinguishers in good working order for every twenty-five trailer spaces located not further than two hundred feet from each trailer space; and (10) additions to the trailers other than porches or entry ways were prohibited from reducing the clearance between trailers or other additions below eleven feet. The letter further warned the violations pose a threat to the health and safety of the occupants and the violations must be brought into compliance with the applicable code to prevent further legal action. Ogden did not take any action to remedy the violations.

In October 2014, the city filed a petition seeking an injunction against the property owner for the above listed violations. At trial, the Des Moines Fire Marshall, Jonathan Lund, testified for the city. He stated the "construction of a mobile home is inherently a little bit more dangerous in the sense that they typically use smaller dimensional lumber," which "can lead to rapid progression of fire." He also testified that the close proximity of the mobile homes creates an exposure hazard, "which leads to more fires." Lund testified the ten-foot access road would make it difficult for firefighters to respond to a fire. He explained:

[W]e require 20-foot-wide fire access roads. That facilitates us positioning a fire apparatus in front of the building and still being able to maneuver another fire apparatus around that engine or truck. . . . Anytime in fighting a fire access is paramount. We have to be able to get there, deploy hose lines within a reasonable distance of the structure to do our job effectively.

Ogden testified about the history and layout of the property and various interactions he had with city employees regarding ordinance violations.[1] Gloria Lang, park resident, also testified, contingent on the court's ruling on the city's objections. Lang stated she did not interact with the city regarding her mobile home and that she would have difficulty relocating should the property cease use as a mobile home park. The city objected to the testimony on the grounds Ogden did not disclose Lang as a witness until the morning of trial and the testimony is irrelevant to the zoning issue at hand.

The court issued its ruling on the evidentiary issues presented at trial in its final order. Regarding Lang's testimony, the court held, "[B]ecause Ms. Lang was not disclosed as a witness until the morning of the trial and her testimony was irrelevant to zoning issues, the objection is sustained and her testimony is excluded." Regarding the use requirements, the court held:

[T]he 1955 Certificate of Occupancy validly established a vested right in a nonconforming use as a trailer court because: (1) the Certificate acknowledges the use as at least partially nonconforming; and (2) the occupancy permit statute required an application and proof that the nonconforming use did not violate the required City ordinances; and (3) the City would not have issued the certificate had compliance in some capacity not been present. Thus, beginning in 1955, Ogden had a vested right to operate Oak Hill as a mobile home park subject to: (1) the language of section

---

[1] The city objected to this testimony, as Ogden failed during discovery to disclose his previous interactions with the city. In its order, the court held, "[B]ecause the City inquired of any statements made by City employees during discovery and Ogden did not identify any of these statements at that time, the objection is sustained and the testimony is excluded. This evidentiary ruling is not part of Ogden's appeal."

2A-49, which allows "a discontinuance . . . necessary for the safety of life or property;" and (2) the boundaries of the nature and character of the legal nonconforming use as it existed in 1955 (which is best represented by the 1963 aerial photographs).

Second, the Court holds that a discontinuance of the nonconforming use under the 1955 Certificate of Occupancy is necessary for the safety of life or property. The 1963 aerial photographs demonstrate that Oak Hill was in violation of many of the contemporaneous zoning ordinances, but Oak Hill of 1963 is far less congested than Oak Hill of 2015. As detailed in the Court's Findings of Fact, conditions at Oak Hill deteriorated markedly between 1963 and 2006 (when the City began photographing Oak Hill at ground level). Now, much of the open space visible in the 1963 photos is filled with the detritus of life: vehicles, outdoor recreational equipment, garbage bins, makeshift gardens, fencing, and crudely constructed additions to the mobile homes. The U-shaped road that runs through Oak Hill is in poor repair, absent markings or well-defined borders. There is no evidence of adequate fire prevention or fighting equipment. The City stated in its original letter regarding this action that the zoning regulations in 1955 were aimed at preserving the health and safety of Oak Hill and its occupants. The occupancy permit statute states that discontinuance of the permit is allowed if the safety of life or property is threatened. Oak Hill is so congested and cluttered as to impede the ability of first responders to adequately address common urban dangers, such as fires and situations requiring police involvement.

The court also held that Ogden's "use of [the] property has intensified beyond acceptable limitations" because the conditions "pose a real threat in the event of an emergency."

Ogden did not file a rule 1.904(2) motion to enlarge or amend the district court findings. Ogden appealed the district court's ruling. Our supreme court granted permission for the filing of amicus curiae brief by eight residents of Oak Hill Mobile Home Park.[2]

---

[2] Amici curiae argue any injunction against the property's use as a mobile home park will lead to its residents' homelessness and the evidence in the record was insufficient to establish safety and health concerns to its residents and the surrounding community. We address the insufficiency of evidence argument in the discussion of Ogden's appeal.

**II. Standard of Review.**

We base our standard of review of an appeal on the manner in which it was tried at the district court. *Ernst v. Johnson Cty.*, 522 N.W.2d 599, 602 (Iowa 1994). "Where there is uncertainty about the nature of a case, a litmus test we use in making this determination is whether the trial court ruled on evidentiary objections." *Id.* Although the underlying action seeks an injunction, the district court made multiple evidentiary rulings. Thus, we review for correction of errors at law.

We review discovery sanctions and evidentiary rulings for an abuse of discretion. *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 385 (Iowa 2012) (explaining standard of review for discovery sanctions); *Williams v. Hedican*, 561 N.W.2d 817, 822 (Iowa 1997) (explaining standard of review for evidentiary rulings).

**III. Discussion.**

Ogden argues the district court erred by concluding (1) a discontinuance of the nonconforming use is necessary for the safety of life or property and (2) any changes to the property are unlawful expansions of the existing nonconforming use.[3] Ogden also argues equitable estoppel prevents the city

---

[3] We also note that during oral arguments, appellant urged us to consider *City of Monroe v. Nicol* in support of his argument that the district court's order should be reversed. 16-1155, 2017 WL 1735875 (Iowa Ct. App. May 3, 2017). In *Nicol*, the city assumed title to an abandoned property pursuant to Iowa Code section 657A.10A(5) (2016). *Id.* at *1. The appellant property-owner specifically challenged the constitutionality of the statute authorizing the city to assume title, arguing it was an unconstitutional taking contrary to the Iowa and United States Constitutions. *Id.* A panel of our court affirmed the district court's order transferring title to the city. *Id.* at 2. We are uncertain how this case supports the appellant's argument. Unlike the facts presented in *Nicol*, here Ogden retains title to his property, and no action was taken by the city under section 657A.10A(5). Nor did Ogden challenge the constitutionality of the regulation used by the

from obtaining an injunction. The city argues Ogden is not entitled to continuing nonconforming use occupancy because the property now has deteriorated so that it is in violation of multiple ordinances since the certificate of occupancy was issued. The city also argues the nonconforming use can be revoked based on health and safety concerns.

### A. Error Preservation—Unconstitutional Taking.

The city argues Ogden failed to preserve error on the issue of an unconstitutional taking because it was not presented to the district court. Ogden argues the issue was raised in his proposed ruling submitted to the district court. Ogden failed to develop his argument regarding a takings claim at the district level.[4] While Ogden did mention "takings" in his proposed rulings as what appears to be background material for land-use law, the trial court did not rule on any takings claims. Ogden also failed to file a rule 1.904(2) motion to enlarge the trial court's findings in order to address the takings issue. To the extent Ogden raises an unconstitutional takings claim in his appellate brief, he has not preserved error. *See Homan v. Branstad*, 887 N.W.2d 153, 161 (Iowa 2016) ("[W]hen a party has presented an issue, claim, or legal theory and the district

---

city to revoke Ogden's nonconforming use. The analysis and legal issues in *Nicol* are unrelated to the issue presented here: whether Ogden exceeded the nonconforming use of his property.

[4] Ogden appears to argue the actions of the city amounted to a regulatory taking. The Supreme Court explained land-use regulations "do not effect a taking requiring compensation if it substantially advances a legitimate state interest." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1023–24 (1992); *see also Iowa Coal Min. Co. v. Monroe Cty.*, 555 N.W.2d 418, 431 (Iowa 1996) (discussing *Lucas*). The Court recognized two exceptions: "When the regulation (1) involves a permanent physical invasion of property or (2) denies the owner all economically beneficial or productive use of the land, the State must pay just compensation." *Lucas*, 505 U.S. at 1028–29. We note Ogden failed to develop these rules—or any argument supporting them—at the district court level.

court has failed to rule on it, a rule 1.904(2) motion is proper means by which to preserve error and request a ruling from the district court.").

### B. Nonconforming Use.

Generally, "[a] nonconforming use of property is one that lawfully existed prior to the time a zoning ordinance was enacted or changed, and continues after the enactment of the ordinance even though the use fails to comply with the restrictions of the ordinance." *City of Okoboji v. Okoboji Barz, Inc.*, 746 N.W.2d 56, 60 (Iowa 2008). While a nonconforming use may continue until legally abandoned, "the nonconforming use cannot be enlarged or extended." *Id.* The purpose of a prohibition against expansion of a nonconforming use is to protect against the growth of "a pre-existing aggravation" that "survives as a matter of grace."[5] *Stan Moore Motors, Inc. v. Polk Cty. Bd. of Adjustment*, 209 N.W .2d 50, 53 (Iowa 1973). The Des Moines Municipal Code reflects this principle. It states, "Nothing in this division shall prevent the continuance of a nonconforming use as authorized, *unless a discontinuance is necessary for the safety of life or*

---

[5] Other jurisdictions generally disfavor the "establishment, continuance, and expansion" of nonconforming uses because of the conflict "with the objectives of comprehensive zoning." *See* Patricia E. Salkin, American Zoning Law § 12:7 (5th ed. 2017) (citing *Billups v. City of Birmingham*, 367 So. 2d 518 (Ala. Crim. App. 1978) ("The spirit and intention of the zoning laws is to restrict any increase of any nonconforming use."); *Hartley v. City of Colorado Springs*, 764 P.2d 1216 (Colo. 1988) ("Nonconforming uses are disfavored because they reduce the effectiveness of zoning ordinances, depress property values, and contribute to the growth of urban blight. Because of their undesirable effect on the community, nonconforming uses should be eliminated as speedily as possible. Accordingly, zoning provisions allowing nonconforming uses to continue should be strictly construed, and zoning provisions restricting nonconforming uses should be liberally construed."); *Cracker Barrel Old Country Store, Inc. v. Town of Plainfield ex rel. Plainfield Plan Com'n*, 848 N.E.2d 285 (Ind. Ct. App. 2006) ("[T]he policy of zoning ordinances is to secure the gradual or eventual elimination of nonconforming uses and to restrict or diminish, rather than increase, such uses. Such policy embodied in a zoning ordinance is important to the trial court in determining the extent and character of changes that will not destroy the character of a nonconforming use.")).

*property.*" Des Moines, Iowa, Zoning Ordinance, div. 5 § 134-155(a) (2014) (emphasis added).[6]

Still, an intensification of nonconforming use does not automatically revoke the owner's ability to continue the nonconforming use, and "[l]andowners are given some latitude . . . and may change the original nonconforming use 'if the changes are not substantial and do not impact adversely on the neighborhood.'" *Okoboji*, 746 N.W.2d at 60 (alteration in original) (quoting *Perkins v. Madison Cty.*, 613 N.W.2d 264, 270 (Iowa 2000)). For example, the nonconforming use of a care facility for disabled persons did not cease when the patient's disabilities changed "from impaired mental functions through aging processes to those caused by mental illness," which violated another ordinance under the applicable zoning regulation prohibiting property use for "persons suffering from a mental sickness, disease, disorder or ailment." *City of Jewell Junction v. Cunningham*, 439 N.W.2d 183, 184–85, 187 (Iowa 1989). Similarly, a restaurant operating under a legal nonconforming use did not lose its nonconforming status when it decided to sell alcohol on the premises. *See Okoboji*, 746 N.W.2d at 63–64.

On the other hand, expanding a marina that sold beer for off-premises consumption to a bar that hosts activities such as karaoke, live music, hog roasting, and on-site parties unlawfully expanded the nature and character of the nonconforming use. *See City of Okoboji, Iowa v. Okoboji Barz, Inc.*, 717 N.W.2d

---

[6] The relevant Des Moines code section at the time the certificate of occupancy was issued also provides for an exception to continuing nonconforming use when "discontinuance is necessary for the safety of life or property." Des Moines, Iowa, Zoning Ordinance, part XX § 2A-49 (1953).

310, 316 (Iowa 2006). Adverse effects on the neighborhood can also exceed the scope of nonconforming use, such as an impact on public services or increased traffic. *See Jewell Junction*, 439 N.W.2d at 187. Our supreme court has not addressed whether the addition of structures or expansion of homes in a mobile home park constitutes an unlawful expansion of a non-conforming use.

Other jurisdictions, however, determined replacing existing mobile homes with larger mobile homes in violation of setback requirements is an unlawful expansion of the property's nonconforming use. *See Kosciusko Cty. Bd. of Zoning App. v. Smith*, 724 N.E.2d 279, 281 (Ind. Ct. App. 2000) (holding zoning ordinance that prohibits expansion of nonconforming uses requires owner to conform to zoning ordinance or request a variance); *Wiltzius v. Zoning Bd. of App. of Town of New Milford*, 940 A.2d 892, 910 (Conn. App. Ct. 2008). These jurisdictions relied on the municipal code language similar to the language expressed in the Des Moines municipal code to support the city's intent to curtail nonconforming uses.

In order to resolve a zoning violation when a nonconforming use is asserted by the property owner, our courts engage in the following burden-shifting analysis: (1) the city has the burden of proving a violation of the ordinance; (2) Ogden "has the burden [to] establish the lawful and continued existence of the use"; and (3) "once the preexisting use has been established by a preponderance of the evidence, the burden is on the city to prove a violation of the ordinance by exceeding the established nonconforming use." *Jewell*, 439 N.W.2d at 186. The parties do not dispute that Ogden is in violation of multiple zoning ordinances. Nor do the parties dispute the 1955 certificate of occupancy

establishes lawful and continued existence of use. Thus, the remaining issue is whether the City has shown Ogden exceeded the nonconforming use established in 1955.

Although this mobile home park has not changed in size or use, the record demonstrates it has grown within its borders in the numbers and location of structures attached to the mobile homes resulting in a narrowing of open space on the roadways and between the homes. After reviewing the record, we hold the district court did not err in finding these changes over a half century have enhanced and intensified the non-conforming use to the point where it is a danger to life and property. First, the record depicts the layout on the property creates a dangerous fire hazard. Lund testified the positioning of the structures within the setback limitations "creates an exposure hazard for us, which leads to more fires." Lund explained the fire hazard is especially present in mobile homes because they are "inherently a little bit more dangerous in the sense that they typically use smaller dimensional lumber. . . . [I]t can lead to [a] rapid progression of fire." Lund also testified the crowded conditions and the narrow, ten-foot access road would inhibit the ability of the fire department to respond effectively:

> [W]e require 20-foot-wide fire access roads. That facilitates us positioning a fire apparatus in front of the building and still being able to maneuver another fire apparatus around that engine or truck. . . . Anytime in fighting a fire access is paramount. We have to be able to get there, deploy hose lines within a reasonable distance of the structure to do our job effectively.

Although Lund's testimony did not explicitly opine the park is dangerous to life and property, he clearly stated the congestion in the park would make it difficult

to contain a fire or even to position the firefighting equipment effectively. The congested conditions, large trash items, altered structures, and parked cars all pose a threat to the fire department's ability to protect life and property. Law enforcement and other public officials would face similar obstacles in providing public services to the property. The district court did not err in enjoining the nonconforming use to protect the "safety of life or property," as authorized by the applicable certificate of occupancy code. The absence of previous notices of violations from the City or the fire department does not justify the risk of tragedy to families living in the park in the event of an emergency. Ogden's failure to respond to the ten violations listed in the 2014 notice leaves no choice in the face of the potential for loss of life or property. Although our record does not expand on complaints by neighboring landowners, the zoning administrator testified, "[C]itizens have filed complaints."

For similar reasons, Ogden's use of the property is not a lawful intensification of an existing nonconforming use. The present congestion and crowding between structures and narrowing the roadway changes the nature and character of the 1955 non-conforming use and presents a danger to residents and neighbors of the park. *See Jewell Junction*, 439 N.W.2d at 187.

**C. Evidentiary Issues.**

Ogden next argues the court abused its discretion in declaring the testimony of Gloria Lang was inadmissible. He claims the district court erroneously based its determination on relevancy. The record, however, reflects an additional reason for the district court's evidentiary ruling. The district court excluded Lang's testimony as a discovery sanction because the witness was not

disclosed until the morning of trial *and* her testimony was irrelevant to zoning issues. The decision of the trial court to exclude witness testimony as a discovery sanction is discretionary and will not be reversed unless there has been an abuse of discretion. *Sullivan v. Chicago & N.W. Transp. Co.*, 326 N.W.2d 320, 324 (Iowa 1982) (holding district court's sanction of excluding a witness's testimony for party's failure to disclose a witness was appropriate and did not amount to an abuse of discretion). Failure to disclose a witness is a valid justification for a discovery sanction. *Id.* The district court did not abuse its discretion in excluding Lang's testimony because Ogden failed to disclose the witness until the day of trial.

**D. Equitable Estoppel.**

Ogden next argues equitable estoppel bars the city from enjoining the use of the mobile home park. "The doctrine of equitable estoppel is a common law doctrine preventing one party who has made certain representations from taking unfair advantage of another when the party making the representations changes its position to the prejudice of the party who relied upon the representations." *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 531 (Iowa 2015). Our supreme court has "consistently held equitable estoppel will not lie against a government agency except in exceptional circumstances." *Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 163, 180 (Iowa 2006) (quoting *ABC Disposal Sys., Inc. v. Dep't of Nat. Res.*, 681 N.W.2d 596, 606 (Iowa 2004)). "The 'exceptional circumstances' under which equitable estoppel will lie against the government include instances when, 'in addition to the traditional elements of estoppel, the party raising the estoppel proves affirmative misconduct or wrongful conduct by

the government or a government agent.'" *Fennely*, 728 N.W.2d at 180 (quoting 28 Am. Jur. 2d Estoppel and Waiver § 140, at 559 (2000) (holding a failure by an assessor to communicate with a property owner in order to obtain information regarding a tax assessment is not misconduct by the government)).

Ogden claims the city's 2003 letter confirming the property's nonconforming-use status and the city's failure to inform him of zoning violations amount to a representation that justifies estoppel. In order to prove estoppel, Ogden must demonstrate: "(1) a false representation or concealment of material fact by the city, (2) a lack of knowledge of the true facts by [Ogden], (3) the city's intention the representation be acted upon, and (4) reliance upon the representations by [Ogden] to their prejudice and injury." *City of Marshalltown v. Reyerson*, 535 N.W.2d 135, 137 (Iowa Ct. App. 1995) (citing *Incorporated City of Denison v. Clabaugh*, 306 N.W.2d 748, 754 (Iowa 1981)). Ogden's claim fails under the first element; the record does not support the city's failure to enforce the zoning ordinance amounts to a false representation or concealment of material fact. As indicated by testimony, the city does not notify property owners every time a zoning infraction occurs. Rather, the city operates on a complaint basis to trigger enforcement. The district court did not err in holding Ogden's equitable estoppel defense fails.

**IV. Conclusion.**

The district court properly granted the city's request for an injunction against Ogden's use of the property as a mobile home park. The city may revoke nonconforming use status for the "safety of life or property." Ogden also exceeded the valid nonconforming use by expanding the structures and reducing

the open space of the mobile home park in a manner that violated multiple city ordinances. Furthermore, the district court properly excluded Lang's testimony because Ogden failed to disclose the witness to the city until the morning of trial. Ogden also failed to prove misconduct by the city in order to succeed on his equitable estoppel claim.

**AFFIRMED.**

Bower, J., concurs; Danilson, C.J., partially dissents.

**DANILSON, Chief Judge**.  (concurring in part and dissenting in part)

I concur with the majority's discussion on all issues except the issue concerning nonconforming use.  In respect to the issue of an unconstitutional taking, I would only add that Ogden also did not plead a counterclaim or defense on the basis of a taking.  I respectfully dissent in regard to the second issue.

I disagree with the majority affirmation of the district court conclusions that the mobile home park's current state exceeds the legal nonconforming use as it existed in 1955 and poses a threat to the safety of people or property at the mobile home park.  I conclude the City has failed to prove both grounds.

The general principles related to nonconforming use of property were recited in *City of Okoboji v. Okoboji Barz Inc.*, 746 N.W.2d 56, 60 (Iowa 2008):

> A nonconforming use of property is one that lawfully existed prior to the time a zoning ordinance was enacted or changed, and continues after the enactment of the ordinance even though the use fails to comply with the restrictions of the ordinance.  *Perkins v. Madison Cty.*, 613 N.W.2d 264, 270 (Iowa 2000).  The prior use of the property essentially establishes a vested right to continue the use after the ordinance takes effect.  *See Quality Refrigerated Servs. v. City of Spencer*, 586 N.W.2d 202, 206 (Iowa 1998).  The nonconforming use is permitted to continue until legally abandoned. *Iowa Coal Mining Co. v. Monroe Cty.*, 555 N.W.2d 418, 430 (Iowa 1996).  However, the nonconforming use cannot be enlarged or extended.  *Stan Moore Motors, Inc. v. Polk Cty. Bd. of Adjustment*, 209 N.W.2d 50, 52 (Iowa 1973).  This limiting principle is carved into the city ordinance at issue in this case.  The ordinance expresses an intent "to permit . . . nonconformities to continue until they are removed, but not to encourage their survival," and provides "that nonconformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district." Okoboji Zoning Ordinance art. IV, § 3.  Nevertheless, the body of law governing nonconforming uses of property recognizes "[l]andowners are given some latitude . . . and may change the original nonconforming use 'if the changes are not substantial and do not impact adversely on the neighborhood.'"  *Perkins*, 613

N.W.2d at 270 (citing *City of Jewell Junction v. Cunningham*, 439 N.W.2d 183, 186 (Iowa 1989)).

In 1955 the City of Des Moines gave its approval to the mobile home park's nonconforming use. As observed by the district court, the exact date when the mobile home park came into existence is unknown. The district court concluded it was sometime between 1947 and 1955. The City has no evidence of the condition of the park or the number of mobile homes in the park in 1955 when the certificate of nonconforming use was granted. The best evidence the City could muster was how the mobile home park existed in 1963. If the mobile home park had been expanded to, say, twice its size, perhaps reliance on its' status in 1963 might serve to meet the City's burden. But here, where the City admits there is no change in size and its use remains as a mobile home park, there is a failure of proof that the nonconforming use has been exceeded.

The district court noted the burden of proof lies first with the City to prove a violation of a zoning ordinance. *See Jewell Junction*, 439 N.W.2d at 186. Upon proof of a violation, the burden shifts to the defendant to establish "the lawful and continued existence of the use." *Id.* If the defendant is successful, the burden shifts back to the City to show the nonconforming use was exceeded. *See id.*

The district court concluded the City met its burden by showing violations of the zoning ordinance existing in 1955. And the majority has outlined ten such violations urged by the City. The City also contended the mobile home park was in violation of current zoning ordinances. The City conceded the 1955 certificate of nonconforming use satisfied the legality of the mobile home park's

nonconforming use.[7]  I agree, but it might be better to say the use of the property does not comply with the zoning restrictions—because the noncompliance does not rise to the level of a violation as its use was legally authorized by the nonconforming-use certificate.  *City of Okoboji*, 746 N.W.2d at 60.

The City thus had the burden to establish the "use" was exceeded. Ultimately, the district court concluded "the nature and character of the mobile home park have substantially changed."  In reaching this conclusion, the district court relied upon the photos from 1963 compared to today's photo to find there was less open space due to congestion "filled with the detritus of life: vehicles, outdoor recreational equipment, garbage bins, makeshift gardens, fencing, and crudely constructed additions to the mobile homes."  The district court also stated the road in the mobile home park was in disrepair, and police and fire would have difficulties responding to emergencies. According to the district court, such circumstances have caused an increase in danger and an intensification of the use beyond acceptable limitations.  Notwithstanding the fact that at least thirty mobile homes are occupied in the mobile home park, the district court enjoined its operation  and ordered the issuance of writs of removal within 180 days.

In respect to the alleged danger, apparently there have been no complaints levied by neighbors, no prior violations initiated by the City (except one unrelated to dangerous conditions), and the fire department has not initiated

---

[7] Notwithstanding its concession, the City argues the certificate of nonconforming use was not authorized and should not be given any validity, citing *Crow v. Board of Adjustment of Iowa City*, 288 N.W.2d 145 (Iowa 1939).  However, because there is no evidence of exactly when the mobile home park came into existence and whether it was grandfathered in prior to the implementation of the zoning ordinances, and also the lack of any evidence the certificate was not properly authorized, there is no evidence to conclude the certificate is invalid.

any action because of any violations. The fire chief only testified that new developments are required to have a twenty-foot-wide access and that the space between mobile homes affects fire safety. The fire chief did not testify the mobile home park was dangerous.

The increase in vehicles from 1963 to today probably is not unlike any mobile home park. The mobile home park needs a thorough clean up and some parking restrictions but the City did not afford Ogden that option. I would conclude there has not been any substantial change in use or significant intensification of the use. Changes from the original nonconforming use have been marginal and the nature and character of the use is substantially unchanged. See *Jewell Junction*, 439 N.W.2d at 183 ("[I]ntensification of a nonconforming use is permissible *so long as the nature and character of the use is unchanged and substantially the same facilities are used*." (citation omitted)).

I would also conclude the City failed to show its need to enjoin the operation of the mobile home under these circumstances. Before granting an injunction to enforce a zoning ordinance the City must establish "(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is no adequate legal remedy available." *City of Okoboji v. Parks*, 830 N.W.2d 300, 309 (Iowa 2013) (citations omitted). Without any prior actions taken by the City against Ogden for prior violations, the record is markedly bare of evidence to show a substantial injury or damage will occur absent an injunction or that no adequate remedy at law is available.

I would reverse.